IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Case No. BK 25-81284 |
| | ) | |
| ANDREW R. WAGNER and | ) | |
| MADDISON A. WAGNER, | ) | Chapter 13 |
| | ) | |
| Debtors, | ) | |
| _____ | ) | _____ |
| MARK E. DOTTORE, RECEIVER, | ) | Adv. P. No. 26-8006 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| ANDREW R. WAGNER and | ) | |
| MADDISON A. WAGNER, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Motion to Dismiss With Leave to Amend**

The debtors and defendants Andrew Wagner and Maddison Wagner filed a motion to dismiss the complaint filed by Mark Dottore, Receiver of The AEM Services, LLC, asserting the complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). In his complaint the Receiver asserts the Wagners were net winners in a Ponzi scheme, and his claim under the Ohio Uniform Fraudulent Transfer Act is excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A) and 1328.

The motion is granted with leave to amend. It is granted because § 523(a)(2)(A) requires the Receiver plead a debt for money the Wagners obtained by actual fraud. For a debtor who is a transferee there are two ways that can be true:

> Route 1: *Bartenwerfer*. The underlying law makes the fraud the debtor's own, so the debt is itself a debt for fraud. Section 523(a)(2)(A) "takes the debt as it finds it." *Bartenwerfer v. Buckley*, 598 U.S. 69, 81-82 (2023).

> Route 2: *Husky*. The debtor participated in the fraud with the requisite intent, thereby "obtaining" the money "by" that participation. *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 365 (2016).

Ohio law closes Route 1. Route 2 may be open, but the complaint does not plead it. In their motion to dismiss the Wagners also invoke the particularity requirements of Rule 9(b). But the particularity question in this case is derivative of the merits and will be left to the end.

### Allegations Pled in the Complaint

The facts pled in the complaint are accepted as true for purposes of the Wagners' motion. The plaintiff Mark E. Dottore is the Receiver of AEM. He seeks to except a debt from the Wagners' discharge under 11 U.S.C. § 523(a)(2)(A) due to the actual fraud of Mark Dente and Brian Buckham. Dente and Buckham marketed AEM as a real estate "wholesaling" company, but it was a Ponzi scheme.

For his part in the scheme Buckham sought out investors. Investors were promised "unrealistic" rates of return, ranging from 36% to 48% per year, up to an annual return of 158%. Dente and Buckham raised at least $282 million from April 2017 through June 2022. As with any Ponzi scheme, they used investments from new investors to pay earlier investors. Maddison Wagner is Buckham's daughter and were recruited by Buckham to invest. She and her husband did and their investment paid off. They were net winners in the scheme, receiving more than they invested.

The Receiver does not allege either debtor made any misrepresentation, had actual knowledge AEM was a Ponzi scheme, or otherwise personally participated in any fraud. Instead, he alleges that the Wagners had "notice" AEM was not legitimate because of the high returns promised. He also alleges the Wagners failed to conduct due diligence "commensurate with the inquiries of a reasonably prudent investor." Although the complaint alleges a familial relationship between Maddison Wagner and Buckham, it does not allege any facts connecting the relationship to actual knowledge or wrongful intent.

The complaint itemizes the challenged transfers in detail, more than 100 of them, in paragraph 59, by date, instrument, bank, and amount. It does not attribute any transfer to one spouse or the other. The complaint also incorporates a forensic accountant's report stating Dente's and Buckham's conduct is consistent with a Ponzi scheme.

Before the Wagners filed their bankruptcy case, the Receiver filed separate
state court actions against each of them seeking to recover their gains as
fraudulent transfers under the Ohio Uniform Fraudulent Transfer Act, Ohio
Rev. Code § 1336.01 *et seq*. The Ohio state court granted the Receiver partial
summary judgment against Andrew Wagner only on July 15, 2025. The state
court found the transfers to Andrew were fraudulent under Ohio law
"regardless of investor knowledge — including complete naïve innocence." It
also rejected Andrew's good faith reliance defense under Ohio Rev. Code
§ 1336.08(A).

The Wagners moved to dismiss under Rule 12(b)(6). They assert the
complaint fails to allege they personally committed fraud. They also assert
the complaint does not plead fraud with the particularity required by Fed. R.
Civ. P. 9(b). The Receiver counters asserting § 523(a)(2)(A)'s passive-voice
construction, as explained in *Bartenwerfer*, excepts any debt obtained by the
actual fraud of third parties, even if the debtor is not culpable.

### Pleading Standards

A complaint must contain "enough facts to state a claim to relief that is
plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A
claim has facial plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the defendant is liable
for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[1] But
conclusory allegations and legal conclusions couched as factual allegations
are not entitled to a presumption of truth. *Id.* at 678–79 ("Rule 8 marks a
notable and generous departure from the hypertechnical, code-pleading
regime of a prior era, but it does not unlock the doors of discovery for a
plaintiff armed with nothing more than conclusions.").

Because the complaint alleges fraud, the plaintiff "must state with
particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P.
9(b). To satisfy the particularity requirement, the plaintiff must plead "the
defendant's fraudulent acts, including when the acts occurred, who engaged

---

[1] Both parties assert a motion to dismiss under Rule 12(b)(6) is appropriate "only when
it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his
claim which would entitle him to relief." The Supreme Court retired this standard long
ago. *See Twombly*, 550 U.S. at 562-63 (observing "no set of facts" is "best forgotten as
an incomplete, negative gloss on an accepted pleading standard: once a claim has been
stated adequately, it may be supported by showing any set of facts consistent with the
allegations in the complaint.").

in them, and what was obtained as a result." *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1075 (8th Cir. 2018).[2] However, "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9 does not give the pleader a "license to evade the less rigid— though still operative—strictures of Rule 8." *Iqbal*, 556 U.S. at 686–87.

## Conclusions of Law

### *Two Routes to Except a Transferee's Debt from Discharge*

Both parties frame the merits dispute as a conflict between *Husky* and *Bartenwerfer*. The Receiver argues *Bartenwerfer* controls, and *Husky's* intent requirement is dicta. He reads *Bartenwerfer* as eliminating any need to prove the debtor's fraud. He contends he must only establish fraud in law, also known as implied fraud. The Wagners, on the other hand, argue *Bartenwerfer* only applies when an agent or partner of the debtor engaged in fraud.

Neither position is correct. *Bartenwerfer* and *Husky* address different routes to the same statutory requirement, a debt for money obtained by actual fraud. If neither route is open, the money was obtained by someone else's fraud, and the debtor holds only the proceeds.

The issue in *Bartenwerfer* was whether § 523(a)(2)(A) excepts a debt from discharge when the fraud was imputed to the debtor. The Court held the debt is excepted. The statute is written in passive voice, excepting debts "obtained" by actual fraud, and is silent as to the actor.

To reach its conclusion, the Court cited Congress's legislation following *Strang v. Bradner*, 114 U.S. 555 (1885), as the "linchpin." In *Strang*, the Court noted under the common law the "fraud of one partner" is "the fraud of all" partners. *Bartenwerfer*, 598 U.S. at 80. Understanding § 523(a)(2)(A) to reflect the passive voice's usual "agnosticism" is therefore "consistent with the age-old rule that individual debtors can be liable for fraudulent schemes they did not devise." *Id*. at 76.

---

[2] The Receiver asserts Rule 9(b) does not apply to his complaint because he alleged a fraudulent conveyance. To support this assertion, he cites *Husky* and *Wagner v. Galipo*, 553 N.E.2d 610 (Ohio 1990). The argument conflates the state cause of action with the federal one. This action is not a fraudulent conveyance action under Ohio law. It is an objection to dischargeability under federal law. Neither *Husky* nor *Wagner v. Galipo* addresses federal pleading standards.

*Bartenwerfer's* holding is not confined, as the Wagners argue, to cases in which the debtor is the partner or agent of the transferor. The argument is based on Justice Sotomayor's observation that "[t]he Court here does not confront a situation involving fraud by a person bearing no agency or partnership relationship to the debtor." *Bartenwerfer*, 598 U.S. at 84 (Sotomayor, J., concurring). That observation did not find its way into the Court's opinion, and "concurrences do not bind lower courts in cases where there is a majority opinion." *United States v. Freeman*, 964 F.3d 774, 780 n.4 (8th Cir. 2020) (quoting *United States v. Duvall*, 740 F.3d 604, 610 (D.C. Cir. 2013) (Kavanaugh, J., concurring)). *Bartenwerfer's* holding is not confined because imputation under state law itself is not necessarily confined to partnership and agency relationships.[3]

Neither is *Bartenwerfer's* holding as broad as the Receiver reads it. Section 523(a)(2)(A) does not itself decide when one person answers for another's fraud:

> 523(a)(2)(A) does not define the scope of one person's liability for another's fraud. That is the function of the underlying law—here, the law of California. Section 523(a)(2)(A) *takes the debt as it finds it*, so if California did not extend liability to honest partners, § 523(a)(2)(A) would have no role to play. [The debtor's] fairness-based critiques seem better directed toward the state law that imposed the obligation on her in the first place.

*Id.* at 81-82 (emphasis added). The debtor's debt in *Bartenwerfer* was excepted from discharge because state law imputed a third party's fraud to her.

### *Route 1 is Closed: Ohio's UFTA Does Not Impute Fraud*

The Receiver focuses on *Bartenwerfer's* reliance on underlying state law. He argues the Ohio Uniform Fraudulent Transfer Act allows him to recover

---

[3] The Receiver's argument that *Bartenwerfer* makes *Strang* "dead law" is beside the point. The argument is directed at the Wagners' attempt to limit *Bartenwerfer* to agency and partnership, which this court does not adopt. But several courts have adopted that limitation. *See, e.g., Dottore v. Scheibal (In re Scheibal)*, 2026 WL 1379193, at *9-10 (Bankr. S.D. Ohio May 14, 2026); *Auction Credit Enters., LLC v. Desouza (In re Desouza)*, 659 B.R. 288, 297–98 (Bankr. E.D. Tex. 2024); *Kuns Northcoast Sec. Ctr. LLC v. Sharp (In re Sharp)*, 2024 WL 2819674, at *10–12 (Bankr. N.D. Ohio June 3, 2024).

fraudulent transfers from the Wagners, and that a bankruptcy court must take the debt as the Ohio law makes it.

The distinction between the two states' laws is dispositive. In *Bartenwerfer*, state law made the debtor liable for her husband's fraud. The fraud by which the money was "obtained" was, as a matter of the underlying California law, the debtor's fraud. Ohio law does not make the Wagners liable for Dente's and Buckham's fraud. It makes them liable for holding money that is not theirs and makes them disgorge the value. Those are different debts. Only the first is a debt "for money … obtained by … actual fraud" within *Bartenwerfer*'s reasoning.

Under the Ohio act, the transferee's liability is not derivative or imputed fraud arising from the fraud committed by the transferor. The Receiver is entitled to a money judgment for "the value of the asset transferred," subject to a good-faith and reasonably equivalent value defense. Ohio Rev. Code §§ 1336.04(A)(1), 1336.08(A), 1336.08(B)(1). A transferee's liability under the act is an independent, restitutionary obligation to disgorge value received. It is not imputed liability for fraud. *See Turney v. Vulaj (In re Vulaj)*, 651 B.R. 310, 315 (Bankr. S.D. Cal. 2023) (holding the transferee "is not being held liable for [the transferor's] debt, which was obtained by fraud, but for her own different role in the transfers").

The Receiver's own framing confirms the point. He alleges the Wagners are liable "under the Ohio UFTA" and that "the mental state, actions, or relationship of the recipient ... is totally irrelevant" to that liability.[4] Liability that attaches regardless of wrongdoing is not "positive fraud, or fraud in fact." It is "implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." *Neal v. Clark*, 95 U.S. 704, 709 (1878). *Bartenwerfer* involved imputed actual fraud, not fraud in law.

The Receiver attempts to prove his argument by noting the Court in *Bartenwerfer* applied § 523(a)(2)(A) element by element.

---

[4] The Receiver is correct that a transferee's knowledge of the transferor's fraudulent intent is not an element of a claim under Ohio Rev. Code § 1336.04(A)(1). *See Profeta v. Lombardo*, 600 N.E.2d 360, 364 (Ohio Ct. App. 1991) (holding knowledge on the part of the grantee of the grantor's actual fraudulent intent is not necessary). That is the point. It is implied fraud. Ohio law's disregard of the transferee's mental state establishes the character of the debt the Receiver seeks to except. It does not make the debt one for money obtained by actual fraud.

> First, she is an "individual debtor." Second, the judgment is a "debt."
> And third, because the debt arises from the sale proceeds obtained by
> David's fraudulent misrepresentations, it is a debt "for money …
> obtained by … false pretenses, a false representation, or actual fraud."

*Bartenwerfer*, 598 U.S. at 74–75. The Court did not ask whether Kate
Bartenwerfer acted with intent. It asked where the debt came from. The
Receiver reads the passage to control. The Wagners are individual debtors.
They owe a debt. The money came from Dente's fraud.

This reading omits *why* the third element was satisfied. The debt in
*Bartenwerfer* was a judgment for fraud. California law made David's fraud
Kate's fraud, and the state court entered judgment against her on that basis.
*Id*. at 81-82. The debt "ar[ose] from" the fraud not because fraud appeared
somewhere in the history of the money, but because the fraud was the legal
ground of her obligation. The Wagners' obligation rests on different grounds.
*Bartenwerfer* decides whose fraud may satisfy the statute. It does not
dispense with the requirement that fraud be the grounds for the debtor's
debt.

The Court's closing observation is not to the contrary. The Court stated,
"innocent people are sometimes held liable for fraud they did not personally
commit, and, if they declare bankruptcy, § 523(a)(2)(A) bars discharge of that
debt." *Bartenwerfer*, 598 U.S. at 83. The sentence describes liability *for fraud*.
It presupposes an underlying law that makes the innocent party answerable
for the wrong. The Court described the underlying law a page earlier.
"Ordinarily, a faultless individual is responsible for another's debt only when
the two have a special relationship, and even then, defenses to liability are
available." *Id*. at 82. The examples provided were agency and partnership.
Each makes the innocent person liable for the fraud itself. The Ohio act does
not.

<em>Route 2 Requires the Transferee's Own Intent</em>

Route 2 remains. In *Husky* the Supreme Court held "actual fraud" under
§ 523(a)(2)(A) includes fraudulent conveyances effected without a fraudulent
representation. It also answered the question this case presents, which is
how a transferee who receives a fraudulent conveyance "obtains" money
under the statute.

> It is of course true that the transferor does not "obtain" debts in a
> fraudulent conveyance. But the recipient of the transfer—*who, with*

> *the requisite intent, also commits fraud*—can "*obtai[n]*" assets "by" his or her *participation* in the fraud…. Thus, at least sometimes a debt "obtained by" a fraudulent conveyance scheme could be nondischargeable under § 523(a)(2)(A). Such circumstances may be rare ... but they make clear that fraudulent conveyances are not wholly incompatible with the "obtained by" requirement.

*Husky*, 578 U.S. at 365 (emphasis added).

<em>Wigley Applies Husky to a UFTA Judgment</em>

The Eighth Circuit applied *Husky* to a debt materially like the Wagners' in *Lariat Cos., Inc. v. Wigley (In re Wigley)*, 15 F.4th 1208 (8th Cir. 2021). The debt in *Wigley* was a judgment under the Minnesota Uniform Fraudulent Transfer Act which, like the Ohio act, did not make the transferor's fraud the transferee's fraud. *Id.* at 1210–11. Had the UFTA judgment itself been a debt for money obtained by actual fraud, no finding about the transferee's state of mind would have been necessary to the judgment. The Eighth Circuit instead required the transferee's own wrongful intent and held implied fraud insufficient:

> A transferee who receives a fraudulent transfer with the requisite wrongful intent commits "actual fraud"…. The transferee's intent must "involv[e] moral turpitude or intentional wrong." *The exception does not cover implied fraud*, which "describe[s] acts of deception that may exist without the imputation of bad faith or immorality."

*Id.* at 1212 (emphasis added) (quoting *Husky*, 578 U.S. at 360, and *Neal*, 95 U.S. at 709).

The bankruptcy court in *Wigley* found Barbara Wigley "participated in the scheme with the requisite wrongful intent." She knew of the pending judgment. And her stated innocent explanation was not credible. That finding was reviewed for clear error. *Id.* at 1213. Under *Wigley*, a judgment under a uniform fraudulent transfer act against a transferee does not by itself satisfy § 523(a)(2)(A) in this circuit. The point is a limited one. If a UFTA judgment is accompanied by findings of the debtor's own fraud or wrongful conduct, the *Husky* route is open.

*Scheibal Decides the Same Question Under the Same Act*

In May of this year another bankruptcy court dismissed a materially identical claim brought by this Receiver against other transferees in the AEM Ponzi scheme. *Dottore v. Scheibal (In re Scheibal)*, 2026 WL 1379193 (Bankr. S.D. Ohio May 14, 2026). The Receiver also sought to except their liability under the Ohio act from discharge. The defendants moved to dismiss under Rule 12(b)(6). The court granted the motion as to the § 523(a)(2)(A) claim.

The court's analysis was the same. The Ohio act does not impute the transferor's fraud to the transferee.

> The OUFTA contains no suggestion that the liability of a transferee for an avoided transfer works this way. The OUFTA's operative provision, Ohio Rev. Code § 1336.08(B), simply provides that if a transfer is avoided, the court may award a money judgment against the transferee. It says nothing about the fraud of the transferor being deemed to be the fraud of the transferee, nor does it create anything like an implied agency or partnership relationship.

*Id.* at *11.

*Husky* governed, requiring the transferee's own fraudulent intent. The Receiver conceded he had identified no relationship between the debtors and Dente beyond that of passive investor. *Id.* at *3.

This court parts company with *Scheibal* on one point. It confined *Bartenwerfer* to the partnership and agency context. *Id.* at *9-10. The disagreement does not matter. Route 1 is closed either way.[5]

*The Receiver's Remaining Arguments*

The Receiver's remaining arguments share a premise, and it is the premise that fails. Section 523(a)(2)(A) does two things at once. It bars discharge of a debt of an individual debtor, and it describes the debt as one "for money … to the extent obtained by" fraud. *Bartenwerfer* holds the fraud need not be the

---

[5] The Receiver pressed his reading of *Bartenwerfer* in at least two courts. As the *Scheibal* court observed, the Receiver "has not cited, and the Court could not locate, even a single case holding that *Husky* does not require that the debtor received an avoidable transfer with fraudulent intent when determining the dischargeability of a debt." *Scheibal*, 2026 WL 1379193, at *8 & nn.16–17 (collecting decisions requiring the transferee's own intent, including seven arising from a single Ponzi scheme).

debtor's. It does not hold that the debt need not be. *Husky* supplies what remains: how a transferee who is a stranger to the fraud comes to have obtained money "by" it. The following arguments establish, at most, the first proposition, and then treats it as having disposed of the second.

*Husky's Intent Requirement is Not Dicta*

The Receiver argues: "*Husky* nowhere states that the debtor must act with 'wrongful intent' for a debt to be excepted from discharge under section 523(a)(2)(A)." Instead, "*Husky* was clearly referring to common law applied in an instance when state law was found wanting." And "that dicta simply cannot control the plain meaning of section 523(a)(2)(A)."

Applying *Bartenwerfer* here would require this court to conclude *Bartenwerfer* overruled *Husky* by implication when the Supreme Court did not overturn *Husky* in *Bartenwerfer*. Only the Supreme Court may overrule its own decisions. "If a precedent of this Court has direct application in a case," a lower court "should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Scheibal*, 2026 WL 1379193, at *10 (quoting *Mallory v. Norfolk S. Ry.*, 600 U.S. 122, 136 (2023)).

But *Husky's* passage is not dicta. It was essential to the judgment. The respondent in *Husky* argued a fraudulent conveyance can never satisfy the "obtained by" requirement because the conveyance hides valuables the debtor already possessed. On that view, nothing was "obtained" in the transfer. Earlier in *Husky* the Court defined "actual fraud" to include fraud without a representation. If a fraudulent transfer could never be "obtained" in § 523(a)(2)(A), the broader definition of "actual fraud" would have been meaningless. The Court rejected the respondent's argument. Requiring the transferee's wrongful intent disposed of it. Reasoning that supplies the necessary answer to an argument against the judgment is not dicta.[6]

---

[6] Nor does the Court's reservation in *Husky's* footnote 3 suggest otherwise.  The footnote reserved "whether the debt to Husky was 'obtained by' Ritz' asset-transfer scheme." *Husky*, 578 U.S. at 365 n.3. The reservation is narrow. The Court left open the application of the "obtained by" requirement to the debtor, a question the Fifth Circuit never reached because it stopped at the meaning of "actual fraud." The Court decided fraudulent conveyances "are not wholly incompatible with the 'obtained by' requirement." The only reason the Court gave was the transferee who, "with the requisite intent, also commits fraud." *Id.* at 365. A court does not remand to apply a construction unless the construction was adopted.

In any event, the dicta argument is also not properly addressed to this court, which is bound by Supreme Court precedent.

> [F]ederal courts "are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when ... [the dicta] is of recent vintage and not enfeebled by any [later] statement."

*Jones v. St. Paul Cos., Inc.*, 495 F.3d 888, 893 (8th Cir. 2007) (*citing City of Timber Lake v. Cheyenne River Sioux Tribe*, 10 F.3d 554, 557 (8th Cir. 1993)). And the Eighth Circuit adopted the so-called dicta. *See Wigley*, 15 F.4th at 1212. This court is bound not only by *Husky*, but also by *Wigley*.

Finally, the Court in *Husky* was not filling in where state law was "wanting." State law provides the scope of liability. *Bartenwerfer*, 598 U.S. at 81–82. In *Husky*, the Court used the common law to supply the meaning of "actual fraud" in the Bankruptcy Code. It did not apply it to state law. *See Husky*, 578 U.S. at 360 ("This Court has historically construed the terms in § 523(a)(2)(A) to contain the 'elements that the common law has defined them to include.'"). Texas law imputed liability to the defendant in *Husky* under a veil-piercing statute. State law was not "wanting."

<em>Congress Deleted "By the Bankrupt," Not "Obtained By"</em>

The Receiver next argues the Wagners' intent is irrelevant because "Congress knows how to make a debtor's conduct or state of mind relevant" and when it "wants to limit exceptions from discharge to wrongdoers, it specifically says so." He points to § 523(a)(6), which excepts debts "for willful and malicious injury *by the debtor*." He compares it to § 523(a)(2)(A), which contains no such phrase because in 1898 Congress deleted similar words from the Bankruptcy Act.

The Receiver is correct by half – pre-*Bartenwerfer* cases requiring the debtor's own misrepresentation in all circumstances were incorrectly decided. *Bartenwerfer* abrogated decisions holding a debt cannot be excepted from discharge unless the debtor knew or should have known of the fraud, including the Eighth Circuit's decision in *Walker v. Citizens State Bank of Maryland (In re Walker)*, 726 F.2d 452, 454 (8th Cir. 1984). *See Bartenwerfer*, 598 U.S. at 74 & n.1 (granting "certiorari to resolve confusion in the lower courts on the meaning of § 523(a)(2)(A)," expressly listing *Walker*). But *Wigley* is not such a case. *Wigley* addressed whether a transferee "obtains" money by

fraud. The Eighth Circuit reached the answer by applying *Husky*, which *Bartenwerfer* left untouched.

The other half is this.[7] The omitted phrase "by the debtor" is not the part of § 523(a)(2)(A) that identifies who must obtain the money. The statute excepts a debt "to the extent obtained by" the fraud, and the money must have been "obtained" by the debtor. *Husky* involved a transferee who stood outside the fraudulent transaction, and the Court held that such a transferee "obtains" assets "by" the fraud only through "his or her participation" and "with the requisite intent." *Husky*, 578 U.S. at 356. Congress's deletion of the words "by the debtor" in 1898 removed the fraudster-identity requirement. But Congress did not delete the "obtained" requirement, and has not repealed *Husky's* construction of what "obtained by" demands when the debtor is a stranger to the fraud. The Receiver's argument does more than recognize the import of the passive voice. It reads the debtor out of the statute.

*Neal Survives to Define Fraud*

The Receiver next argues that courts misconstrued § 523(a) as requiring an actor based on *Neal v. Clark*. He asserts *Neal* is "dead law" after *Bartenwerfer*. In *Neal*, the Court construed § 33 of the Bankruptcy Act of 1867. The Act excepted debts "created by the fraud or embezzlement of the bankrupt." Congress deleted the words "of the bankrupt" in 1898. Because *Bartenwerfer* treated the deletion as the "linchpin" of its analysis, the Receiver argues *Neal* "has no validity with respect to section 523(a)(2)(A)."

The argument is not availing. The Court in *Neal* decided two things. It construed the 1867 Act to require the debtor commit the fraud. *Neal*, 95 U.S. at 707. The Court also defined the term "fraud" in the exception to discharge. *Id*. at 709. The first holding did not survive congressional action. The second did. The Supreme Court acknowledged the continued precedential value in both *Husky* and in *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 275–76

---

[7] Likewise, the Receiver's use of *expressio unius est exclusio alterius* fails. The doctrine bars courts from adding exceptions to a general prohibition. This court does not add the agency and partnership exceptions to *Bartenwerfer* for which the Wagners advocate. Rather the Code is applied as Congress wrote it, including giving effect to the word "obtained." The Receiver violates the doctrine the other way. He seeks to treat "obtained" as surplusage because "actual fraud" is agnostic as to the actor. *Expressio unius* does not license reading a word out of a statute any more than it licenses reading one into it.

(2013). In *Bullock*, the Court unanimously held "defalcation" under § 523(a)(4) requires a culpable state of mind. It quoted *Neal*:

> [D]ebts created by "fraud" are associated directly with debts created by "embezzlement." Such association justifies, if it does not imperatively require, the conclusion that the "fraud" referred to in that section means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality.

*Bullock*, 569 U.S. at 275–76 (quoting *Neal*, 95 U.S. at 709).

The Receiver concedes the point. He states, "*Neal* does correctly state the common law meaning of actual fraud." The concession ends the argument. The definition is the only part of *Neal* that applies here. Whether the fraud must be the debtor's own fraud is a different question, and *Neal* is not cited for it.

### *The Receiver's Other Authorities are Not Dispositive*

Other discharge cases the Receiver relies upon do not support his position. Several support the Wagners. *See Kahkeshani v. Hann (In re Hann)*, 2023 WL 6803541 (5th Cir. Oct. 16, 2023) (applying *Bartenwerfer's* Route 1 as written where the debtor did not personally make the representation, but Texas veil-piercing law made his corporation's fraud his own); *CFTC v. Glenn (In re Glenn)*, 2024 WL 4042956 (D. Colo. Sept. 4, 2024) (sitting in appellate capacity and finding the debtor personally committed the fraud because he "obtained the money by fraud, fraudulent misrepresentation, or false pretenses."). These cases did not involve a faultless debtor. They involve imputed fraud.

The Receiver reads differently *PRN Real Estate & Invs., Ltd. v. Cole*, 85 F.4th 1324 (11th Cir. 2023). He cites its observation that "[a]s long as fraud was involved when the debtor obtained the assets, the debtor need not be the party who committed the fraud for § 523(a)(2)(A) to apply." *Id*. at 1347 n.6 (citing *Bartenwerfer*, 598 U.S. at 83). The citation is accurate, but it does not decide this case. The footnote addresses who must commit the fraud. It does not address what makes a debt one for money "obtained by" fraud.

The Eleventh Circuit stated that requirement in the text the footnote annotates. A creditor must show "(a) the bankruptcy debtor obtained money,

property, or services by actual fraud; and, (b) the debt to be excepted resulted from the debtor's fraudulent receipt." *Id*. at 1346-47. The second requirement is satisfied here. The first is not. Whether a debtor who did not commit the fraud nevertheless obtained money "by actual fraud" turns on whether the underlying law makes the debt a debt for fraud. California law did. Ohio's act does not.

The facts of *PRN* confirm the point. The debtor there owned the transferor. He caused it to transfer $4 million to an account he and his wife owned as tenants by the entireties. He was not faultless. He was alleged to be the author of the transfer, not a stranger who received the proceeds of another person's fraud.

The Receiver also cites decisions recognizing *Bartenwerfer*'s impact on § 523(a)(2) precedent. *See Grange Ins. Ass'n v. Woods (In re Woods)*, 660 B.R. 905 (B.A.P. 10th Cir. 2024); *M.O. v. Del Rosario (In re Del Rosario)*, 668 B.R. 618 (B.A.P. 9th Cir. 2025). Neither addresses whether a transferee who is a stranger to the fraud "obtains" money within the meaning of the statute, and neither disturbs *Husky* or *Wigley*. Moreover, *Del Rosario* is instructive the other way. The complaint was dismissed without leave to amend where the plaintiff creditor similarly argued a debt was excepted from discharge because state law imposed liability. The difference is *Del Rosario* turned on the inclusion of "by the debtor" in § 523(a)(6) not on "obtained" in § 523(a)(2)(A).

The Receiver finally collects decisions applying *Bartenwerfer's* passive-voice reasoning to other statutes. None of them assist the Receiver. *See, e.g., Murrin v. Comm'r*, 152 F.4th 136, 145 (3d Cir. 2025) (applying the unlimited assessment period under 26 U.S.C. § 6501(c)(1) where the taxpayer's preparer, not the taxpayer, filed the fraudulent return); *Montanez v. Price*, 154 F.4th 127, 150 (3d Cir. 2025) (applying disability discrimination provisions without respect to a specific actor); *American Forest Res. Council v. United States*, 77 F.4th 787, 798–99 (D.C. Cir. 2023) (applying a provision of the Oregon and California Railroad and Coos Bay Wagon Road Grant Lands Act "without respect to a particular actor"); *Shepler's Inc. v. City of Mackinac Island*, 2026 WL 700482 (6th Cir. Mar. 12, 2026) (involving

construction of franchise agreements).[8] In each of these cases the passive verb is the operative verb. Here it is not the only one.

*Equity is Not a Substitute for Required Elements*

The Receiver closes with equity. He says the Wagners do not seek a "fresh start." They seek a "supercharged head start." The Wagners are not the "honest but unfortunate" debtors the Bankruptcy Code protects. They are "large net winners of a Ponzi scheme" who converted their winnings into exempt assets at the expense of "defrauded, losing investors."

The argument has equitable force. Hundreds of people lost money to Dente and Buckham. But the Receiver's reading would except from discharge every judgment against every transferee, under every state's fraudulent transfer act. It would reach the retiree who received a distribution and spent it, or the charity that received a donation. The Receiver's reading sweeps up far more than just the Wagners.

Moreover, whatever equitable powers bankruptcy courts hold "must and can only be exercised within the confines of the Bankruptcy Code." *Law v. Siegel*, 571 U.S. 415, 421 (2014). Where state law does not impute the transferor's fraud, § 523(a)(2)(A) requires the transferee to have obtained the money by his or her own participation in it. If a complaint does not plead the requirement, the court may not supply it as a matter of equity. Whether the Bankruptcy Code is overly narrow is a question for Congress. And the remedy for a state law that imposes liability without culpability lies, as the Court observed in *Bartenwerfer*, with the state. *Bartenwerfer*, 598 U.S. at 82.

*Route 2 is Not Pled*

Because Ohio law does not make Dente's and Buckham's fraud the Wagners' fraud, the Receiver's only remaining route is the Wagners' own participation in it. He must plausibly allege the Wagners received the transfers with intent involving moral turpitude or intentional wrong. That requirement also resolves the Wagners' particularity objection, which is that "no allegations as

---

[8] The Receiver also cites Eighth Circuit precedent citing *Bartenwerfer* as "equating 'plain and ordinary meaning' with what 'an ordinary English speaker would understand [a] sentence to mean.'" *See Christopherson v. Cinema Ent. Corp.*, 161 F.4th 525, 530 (8th Cir. 2025). Here, giving "obtained" its ordinary meaning avoids treating it as surplusage.

to fraud are made as to Defendants whatsoever." Rule 9(b) is not dispositive standing alone. The substantive requirements of the claim are.

Had the Receiver been required to establish only Dente's and Buckham's fraud, Rule 9(b) would be satisfied. The complaint states their scheme and conduct in detail, itemizes more than 100 challenged transfers by date, instrument, bank, and amount, and incorporates the forensic accountant's report. But the Receiver must also make a showing of the Wagners' state of mind as a substantive element of § 523(a)(2)(A), and as to that the complaint satisfies neither Rule 9(b) nor Rule 8(a)(2).

He pleads inquiry notice and a failure to conduct diligence "commensurate with the inquiries of a reasonably prudent investor."[9] Both sound in negligence. Neither is an allegation of fraud. The absence of allegations as to the Wagners' state of mind is therefore not simply a Rule 9(b) problem. It is a Rule 8 and *Twombly*/*Iqbal* plausibility problem. The complaint pleads no facts supporting a plausible inference about what either debtor knew or intended.

The Ponzi scheme does not fill the gap.[10] It establishes only Dente's and Buckham's actual intent to hinder, delay, or defraud, "regardless of investor knowledge — including complete naïve innocence."

Likewise, the Ohio state court's summary judgment against Andrew Wagner does not supply the necessary intent. The state court found Andrew "failed to establish that he justifiably relied (aka possessed good faith)." That is a finding he did not meet his burden to prove an affirmative defense under

---

[9] This includes two allegations that are conclusions rather than facts. Paragraph 69 alleges that Buckham "brought his daughter Maddison into the scheme." Paragraph 78 alleges that "[f]rom the inception of payments to the Debtors, and at the time of each Transfer, the Debtors had notice that AEM was not a legitimate business." Neither alleges what either debtor was told, when, or what he or she understood.

[10] The Receiver cites *Kelley v. Boosalis*, 974 F.3d 884, 892 (8th Cir. 2020). "In a Ponzi scheme, payment of interest using other investors' money plainly aims to deceive those other investors." *Id. Boosalis* does not construe § 523(a)(2)(A) and does not address dischargeability. It only establishes Dente's and Buckham's intent, which, at this stage, no one disputes. He collects authority that a Ponzi scheme is *per se* actual fraud and every transfer made in the course of such a scheme is made "with actual intent to hinder, delay, or defraud as a matter of law." *See, e.g., Bash v. Textron Fin. Corp. (In re Fair Fin. Co.)*, 834 F.3d 651, 670 (6th Cir. 2016). The proposition is accurate. But it only establishes Dente's and Buckham's intent. It does not establish the Wagners' intent, which is what § 523(a)(2)(A) requires.

Ohio Rev. Code § 1336.08(A). A failure to prove good faith is not an affirmative finding of moral turpitude or intentional wrongdoing, which § 523(a)(2)(A), as construed in *Husky* and *Wigley*, requires.

A second pleading defect compounds the first. The complaint refers to the Wagners collectively, and the transfers listed in paragraph 59 of the complaint are not attributed to either spouse. Dischargeability is determined debtor by debtor. *See* 11 U.S.C. § 523(a) (applying the section to "an individual debtor"). Each debtor's receipt, each debtor's benefit, and each debtor's state of mind must be pled individually.

*Leave to Amend*

Leave to amend is granted because it is not evident that amendment would be futile. Maddison Wagner is the daughter of one of the operators of the Ponzi scheme. But the Receiver does not allege what Maddison learned from her father, or when. He does not allege knowledge or conscious avoidance of knowledge. He alleges only that the "high interest rate" of the notes put the Wagners on inquiry notice. Under the circumstances, if the Receiver is taking *Husky's* Route 2, amendment is not futile.

IT IS THEREFORE ORDERED:

1.  The debtors' motion to dismiss is granted with leave to amend.

2.  The Receiver is granted leave to amend his complaint. Any amendment must be filed by August 31, 2026.

3.  Any amended complaint must state, separately for each debtor, facts supporting the debtor's knowledge or intent.

4.  If an amended complaint is not filed timely, the court will enter an order dismissing this adversary proceeding without further notice or hearing.

DATED: August 10, 2026

BY THE COURT:

/s/ Brian S. Kruse
Brian S. Kruse
Chief Bankruptcy Judge